**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **In the Matter of the Extradition of**      ) | |
| **Piotr Jozef Schumann**      ) | **No. 18 CR 283** |
|      ) | |
|      ) | **Magistrate Judge Young B. Kim** |
|      ) | |
|      ) | **October 3, 2018** |
|      ) | |

**MEMORANDUM OPINION and ORDER**

The Republic of Poland seeks the extradition of Piotr Jozef Schumann pursuant to the Extradition Treaty Between the United States of America and the Republic of Poland, U.S.-Pol., July 10, 1996, S. TREATY DOC. NO. 105-13 (1997), and the Agreement between the United States of America and the Republic of Poland on the application of the Extradition Treaty between the United States of America and the Republic of Poland signed 10 July 1996, U.S.-Pol., June 9, 2006, S. TREATY DOC. NO. 109-14 (2006) (together, "the Extradition Treaty"). Under the Extradition Treaty the United States and Poland agreed "to extradite to each other, pursuant to the provisions of this Treaty, persons whom the authorities in the Requesting State seek for prosecution or have found guilty of an extraditable offense." (R. 8 (Govt.'s Crim. Compl. Ex. 1b) at 77.) Poland seeks to prosecute Schumann for crimes including participating in two separate robberies, fraudulently obtaining a false passport, and using that false passport to illegally cross Poland's border into Slovakia. The United States currently seeks an order certifying Schumann's extradition for the Secretary of State's surrender decision and requiring Schumann

to remain in the custody of the United States Marshal pending the conclusion of the extradition process. (R. 18.) For the following reasons, the government's requests are granted, and this court certifies this extradition case to the United States Secretary of State for further consideration:

## Procedural Background

On May 9, 2018, the United States filed a complaint in furtherance of Schumann's extradition pursuant to 18 U.S.C. § 3184, and shortly thereafter it filed Poland's formal extradition request and supporting documents. (R. 1; R. 7 (Govt.'s Crim. Compl. Ex. 1a); R. 8 (Govt.'s Crim. Compl. Ex. 1b).) A warrant was issued for Schumann's arrest. After the government arrested Schumann and he made his initial appearance, the court ordered his detention pending further action. (R. 9.) The court appointed counsel for Schumann, (R. 21), and then the parties briefed the issues related to the extradition request as well as the government's request that Schumann remain in federal custody pending the conclusion of the extradition proceedings. On August 21, 2018, the court held a bond and extradition hearing. (R. 27.) Schumann filed an additional brief with evidence in support of his bond request on September 5, 2018, and the extradition and bond requests are currently ripe for resolution.

## Factual Background

In support of their extradition request, Polish authorities submitted documentary evidence supporting allegations against Schumann for robbery, fraudulently obtaining a false passport, and using that false passport to cross

Poland's border. Those documents include signed statements that Schumann's alleged accomplices made to police in Poland. (R. 7 at 39-46, 103-141.) According to those statements, in March 2007 Schumann and two accomplices decided to rob a store in Chojnice, Poland. They drove to the store, and Schumann waited in the car while the two accomplices went into the store wearing masks. The first accomplice put a gun to the head of a store employee and ordered her to open the cash register, and when she complied, the second accomplice took money from the register. The two accomplices then ran back to the car and Schumann drove them to a place where they hid the gun and masks. Schumann and his accomplices then divided the stolen money amongst themselves.

Three weeks later, Schumann and the same accomplices decided to commit another robbery. On March 31, 2007, they drove to a gas station in Chojnice, Poland, along with a fourth person who did not participate in the robbery. Schumann's two accomplices wore their masks and Schumann wore a black stocking over his head. The three men entered the gas station armed. Schumann had an air gun, one accomplice had a toy gun, and the second accomplice had a wooden bat. The men went into the gas station's office, threatened an employee with a gun, and demanded money. One of the accomplices kicked the employee while he was on the floor. After the employee told them money was in the till, the men took money and a cell phone from the drawer. When the robbery was complete, Schumann drove the getaway car. Schumann and the two accomplices

sold the stolen cell phone and shared the stolen money and the proceeds from the cell phone sale.

Three months later, Schumann used the identifying details of his friend Kamil Podgorski and forged Podgorski's signature on a passport application. Based on the fraudulent application, the Passport Department of the Pomeranian Province Office in Gdynia issued Schumann a passport in Podgorski's name. The passport had Schumann's photo, but the remaining information identified him as Podgorski. Schumann used this fraudulent passport to cross the border of Poland on October 3, 2007. Schumann eventually made his way to the United States, where he has been living as a fugitive.

## Legal Framework

The extradition process set out in 18 U.S.C. § 3184 unfolds in two steps. First, a judicial officer issues an arrest warrant for the person sought for extradition and then conducts a hearing to decide whether the evidence is "sufficient to sustain the charge under the provisions of the proper treaty." *See* 18 U.S.C. § 3184; *In re Extradition of Jarosz*, 800 F. Supp. 2d 935, 939 (N.D. Ill. 2011). The extradition hearing is not subject to the Federal Rules of Evidence or Criminal Procedure, and "the person whose extradition is sought is not entitled to a full trial." *Eain v. Wilkes*, 641 F.2d 504, 508 (7th Cir. 1981). Following the hearing the judicial officer must decide whether to certify to the executive branch that the treaty requirements for extradition are satisfied.

If the judicial officer concludes that the extradition requirements have been met, the officer "shall certify the same" to the Secretary of State for a warrant to issue for the surrender of the requested person. 18 U.S.C. § 3184. In this second step of the process, the decision whether the fugitive should be turned over to the requesting country rests entirely with the Secretary of State. *Id.* §§ 3184, 3186; *Eain*, 641 F.3d at 508. It is up to the Secretary of State, not the court, to weigh any defenses the fugitive raises touching on international relations, such as "contentions that an extradition request is politically motivated, that the requesting state's justice system is unfair, or that extradition should be denied on humanitarian grounds." *In re Extradition of Noeller*, No. 17 CR 664, 2017 WL 6462358, at *2 (N.D. Ill. Dec. 19, 2017).

## Analysis

The court finds that Schumann is subject to extradition and that bond is not appropriate during the pendency of the extradition question before the Secretary of State.

### A.      Request to Certify Extradition

This court's role in these proceedings is limited to determining if extradition is proper after weighing whether: "(1) the judicial officer was authorized to conduct extradition proceedings; (2) the court had jurisdiction over the fugitive; (3) the applicable treaty was in full force and effect; (4) the crimes for which surrender was requested were covered by the treaties; and (5) there was competent legal evidence for the decision." *In re Extradition of Markey*, No. 3:09-mj-75-CAN, 2010 WL

610975, at *1 (N.D. Ind. Feb. 18, 2010). In responding to the government's certification request, Schumann challenges only the last two factors. Specifically, he argues that the crimes for which he stands accused do not qualify under the Extradition Treaty and that the Polish government's submission of evidence is insufficient to meet the probable cause standard. Having reviewed the Extradition Treaty, the parties' submissions, and the evidence provided by the Polish government, the court concludes that each of the certification factors is met in this case.

Starting with the uncontested factors, federal magistrate judges are specifically included among the judicial officers authorized by the extradition statute to consider extradition, and there is no dispute that Schumann was found and is now in federal custody within this district, giving this court personal jurisdiction to determine whether he is subject to extradition. *See* 18 U.S.C. § 3184; *In re Extradition of Ortiz*, 444 F. Supp. 2d 876, 882 (N.D. Ill. 2006). As for the third factor, the government has provided a declaration from an attorney advisor in the Office of the Legal Advisor for the Department of State attesting that the Extradition Treaty is in full force and effect between the United States and the Republic of Poland. (R. 8 at 71-74.) This court therefore determines that there is a valid extradition treaty in full force and effect between the United States and Poland. *See In re Extradition of Ortiz*, 444 F. Supp. 2d at 882.

Turning to the first of the contested factors, this court must determine whether the crimes Schumann is wanted for in Poland are covered by the

Extradition Treaty. Under 18 U.S.C. § 3184, extradition may be appropriate where a sworn complaint charges the fugitive "with a crime provided for in the applicable extradition treaty." *In re Extradition of Ortiz*, 444 F. Supp. 2d at 882-83. Article 2(1) of the Extradition Treaty makes it clear that an offense is extraditable "if it is punishable under the laws in both Contracting States by deprivation of liberty for a maximum period of more than one year or by a more severe penalty." (R. 8 at 77.) Article 2(3)(a) states that a qualifying offense is extraditable "whether or not the laws in the Contracting States place the offense within the same category of offenses or describe the offense by the same terminology." (Id.) Under this concept of "dual criminality," where "the acts of the accused are considered criminal in both nations, extradition follows even if the requesting country does not have a criminal statute analogous to the one that makes the acts criminal in the United States." *DeSilva v. Di Leonardi*, 125 F.3d 1110, 1113 (7th Cir. 1997).

Here the District Public Prosecutor's Office in Slupsk, Poland submitted excerpts from the Polish penal code describing the offenses and penalties for which Schumann is sought. (R. 7 at 47-48.) Schumann is wanted under Section 280(1) of the Polish Penal Code with respect to the two armed robberies. Those crimes carry a penalty of imprisonment for a period of two to twelve years. (Id.) The parallel charge of robbery under Illinois law is a felony that also carries a maximum penalty of more than one year. *See* 720 ILCS 5/18-1; 730 ILCS 5/5-1-9; 730 ILCS 5/5-4.5-35. With respect to the passport-related crimes, Schumann is wanted for fraudulently obtaining a false passport in violation of Articles 270(1), 272, and 275(1) of the

Polish Penal Code. All of those crimes carry a maximum prison term of two or three years. (R. 7 at 47.) The parallel offense in the United States of making a false statement on a passport application carries a maximum penalty of ten years' imprisonment. *See* 18 U.S.C. § 1542. Finally, with respect to the offense of crossing the Polish border using a false passport, Schumann could face a maximum punishment under Article 264(2) of the Polish Penal Code of three years' imprisonment, (R. 7 at 47), while he could face ten years of imprisonment for a similar offense in the United States, *see* 18 U.S.C. § 1542. Thus, the court concludes that dual criminality exists for each of the charges Schumann faces under Polish law.

Schumann does not contest that the offenses cited by the government carry maximum penalties of more than one year, but he nonetheless argues that the charges for three of the four offenses are not extraditable offenses. With respect to the two robbery offenses, Schumann points to a "personal statement" submitted by one of his alleged accomplices, Lukasz Zakrzewski, stating that during Zakrzewski's prosecution for the robberies "the legal qualification of the crime was changed . . . from a major crime to a misdemeanor, due to the circumstance of the absence of use of a dangerous weapon." (R. 25, Def.'s Resp. Ex. A at 4.) According to Schumann, this means he would only face a misdemeanor in Poland. There are no court documents to substantiate Zakrzewski's personal statement, but even if there were, the fact that an accomplice may have pleaded guilty to or otherwise been convicted of a lesser offense does not change the fact that Schumann could face a felony

conviction under Polish law carrying a prison term of more than one year. Accordingly, the robbery offenses qualify as extraditable offenses under the Extradition Treaty.

With respect to the charge for crossing the border of Poland using a fraudulent passport, Schumann asserts that the statute of limitations for that offense expired on October 3, 2017, and thus argues that the offense falls outside the scope of the Extradition Treaty. (R. 25, Def.'s Resp. at 4.) Schumann bases this assertion on a statement made by the Deputy District Public Prosecutor in Slupsk, Poland in the government's submissions, (see R. 7 at 45), but the government asserts that the prosecutor's statement rests on an outdated version of the Polish code, (R. 26, Reply at 3). The government points to updated information from the District Public Prosecutor in Slupsk from June 2016 stating that the limitation period for the relevant offense actually ends on October 3, 2022. (R. 8 at 70.) This court will defer to a foreign nation's interpretation of its own laws. *See In re Assarsson*, 635 F.2d 1237, 1244 (7th Cir. 1980). Accordingly, this court concludes that the statute of limitations under Polish Penal Code Article 264(2) is not a bar to extradition here.

Finally, this court must determine whether there is sufficient evidence to support a finding of probable cause with respect to the charges for which extradition is sought. *See In re Extradition of Jarosz*, 800 F. Supp. 2d at 940. Under the Extradition Treaty a request for extradition must be supported by "such information as would justify the committal for trial of the person if the offense had

been committed in the Requested State." (R. 8 at 80.) That language essentially points to a probable cause standard, which requires the court to "make a practical, common sense decision whether, given all the circumstances . . . there is a fair probability that the defendant committed the crime." *In re Extradition of Jarosz*, 800 F. Supp. 2d at 941 (internal quotation and citation omitted). In other words, in the extradition hearing context "probable cause will be found where there is evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *In re Extradition of Cruz*, No. 16 CR 283, 2016 WL 6248184, at *3 (N.D. Ill. Oct. 26, 2016) (internal quotation and citation omitted).

Because an extradition proceeding is not a trial and the Federal Rules of Evidence do not apply, hearsay evidence can be used to support a probable cause finding. *Bovio v. United States*, 989 F.2d 255, 259 (7th Cir. 1993). The court may rely on accomplice testimony to support a probable cause finding, and because issues of credibility are to be determined at trial, the defendant in an extradition proceeding is not entitled to challenge the credibility of accomplice statements submitted by the requesting country. *Id.*; *see also Eain*, 641 F.2d at 510 (noting that accomplice "evidence may be of particular importance in extradition cases where all the alleged criminal activity occurred in a distant country"). Although the defendant may introduce evidence that explains or clarifies the requesting country's evidence, he is not entitled to introduce evidence that conflicts with it. *See Collins v. Loisel*, 259 U.S. 309, 315-17 (1922); *Eain*, 641 F.2d at 511. In short, "the

defendant's right to challenge the evidence introduced against him is quite limited." *In re Extradition of Ortiz*, 444 F. Supp. 2d at 884. That said, in relying on affidavits or accomplice testimony in an extradition proceeding the court must ensure that the evidence has sufficient indicia of reliability to support probable cause. *Id.*

Here the court concludes that the evidence submitted by the government is sufficient to support a finding of probable cause. As described above, the Polish authorities provided certified and signed accomplice statements from two witnesses describing in detail Schumann's role in the two robberies. A third witness described Schumann's participation in the second robbery. The accomplices described Schumann receiving a share of the robberies' proceeds. The Polish authorities also submitted a witness statement from Podgorski attesting that he was convicted of aiding Schumann in obtaining a false passport by letting him use Podgorski's identifying documents in his passport application. (R. 8 at 66.) These kinds of accomplice and witness statements are sufficient to support a probable cause finding in the extradition context. *Bovio*, 989 F.2d at 259. Moreover, the Polish authorities submitted evidence summaries from the Deputy District Public Prosecutor in Slupsk showing that on October 3, 2007, Schumann left the Republic of Poland through the border checkpoint at Leluchow-Circ and entered Slovakia pretending to be Podgorski and that he then engaged in further international travels using a passport issued to Podgorski but with his photo. (R. 7 at 44.) Evidence that Schumann fled Poland using fraudulent documents "is a legitimate ground from which to infer guilt" in the robberies. *See Eain*, 641 F.3d at 511.

In attacking the evidence in support of probable cause on the robbery offenses, Schumann faults the government for relying entirely on the statements of his alleged accomplices to support the extradition request. But the Seventh Circuit has made clear that accomplice evidence is competent to support a probable cause finding. *See Eain*, 641 F.2d at 510. Schumann attempts to cast doubt on the accomplice statements by pointing out that two other witnesses had trouble identifying Schumann in a photo array. But that assertion goes to the weight of the evidence, which is a matter for the courts in Poland to resolve. *See In re Extradition of Markey*, 2010 WL 610975, at *4. Schumann also points to the unauthenticated personal statement by alleged accomplice Zakrzewski, in which he appears to recant his previous statements that Schumann participated in the robberies. (R. 25, Def.'s Resp. Ex. A at 4.) His previous statement is certified by the Polish government and directly implicates Schumann. The recantation, if authentic, speaks to the credibility of the evidence against Schumann, and issues of credibility are to be determined at trial, not in these extradition proceedings. *See Bovio*, 989 F.2d at 259. Moreover, to the extent that Schumann points to a lack of physical evidence, (see R. 25, Def.'s Resp. at 4), "physical evidence need not be provided for extradition to be ordered," *In re Extradition of Ortiz*, 444 F. Supp. 2d at 890.

With respect to the evidence supporting a finding that Schumann fraudulently obtained a passport using Podgorski's personal information, Schumann argues that Podgorski's statement says that Schumann's parents, not Schumann, asked him to provide them with his identity information. He further

argues that there is no evidence that it was Schumann who obtained or signed the passport. (R. 25, Def.'s Resp. at 5.) But Podgorski's statement also says that he was convicted of aiding Schumann in obtaining a passport. The Deputy District Public Prosecutor in Slupsk also states in his request for extradition that Schumann used the false information to submit a passport application to the Passport Department at the Pomeranian Province Office in Gdynia and was issued a passport using his picture and Podgorski's identifying information. (R. 7 at 44.) In the extradition context the court may rely on evidence summaries presented by public prosecutors to support a probable cause finding, even where they reflect multi-level hearsay. *See In re Extradition of Jarosz*, 800 F. Supp. 2d at 945-47. Although the evidence underlying the offense of fraudulently obtaining a passport is noticeably weaker than that underlying the robbery offenses, the court concludes that Podgorski's statement together with the prosecutor's evidence summaries are sufficient to support a probable cause finding here.

Finally, Schumann argues that extradition should be denied because, he says, shortcomings in the Polish judicial system may prevent him from receiving a fair trial if he returns to Poland. (R. 25, Def.'s Resp. at 6.) Because that argument relates to issues of fairness in a foreign justice system and not the requirements for certification, Schumann must direct his fairness concern to the Secretary of State. *In re Extradition of Noeller*, 2017 WL 6462358, at *2.

**B.     Schumann's Request for Release Pending Final Disposition**

Although Schumann acknowledges that the federal extradition statute does not provide for bail, he asks the court to release him from custody pending the final disposition of the extradition proceedings, (see R. 28, Def.'s Br. in Support of Bond). In support of his request, Schumann asserts that he presents "special circumstances" because, according to him, he is neither a flight risk nor a danger to the community, and he provides financial support to his ailing grandparents. In support of his request Schumann has submitted tax documents showing that he owns and operates a business in Illinois, along with statements from relatives attesting to his good character and his role as a financial provider for his family members.

The Supreme Court established over 100 years ago that "bail should not ordinarily be granted in cases of foreign extradition." *Wright v. Henkel*, 190 U.S. 40, 63 (1903). The presumption against bail in these circumstances exists because "[i]f the United States were to release a foreign fugitive pending extradition and the defendant absconded, the resulting diplomatic embarrassment would have an effect on foreign relations and the ability of the United States to obtain extradition of its fugitives." *In re Extradition of Molnar*, 182 F. Supp. 2d 684, 687 (N.D. Ill. 2002). Accordingly, a court will extend bail in the extradition context only where "special circumstances" exist. *Id.*

Whether Schumann is a flight risk or a danger to the community is not a question of special circumstances, but rather are factors that serve as conditions

precedent that must exist before the court will even consider any special circumstances. *See In re Extradition of Molnar*, 182 F. Supp. 2d at 687; *In re Extradition of Noeller*, 2017 WL 6462358, at *4. Here, Schumann does not contest that he has been living as a fugitive in the United States for years, and the fact that there is probable cause to show he alluded border authorities using a false passport suggests that Schuman is a flight risk. *See In re Extradition of Noeller*, 2017 WL 6462358, at *3; *In re Yusev*, No. 12 M 727, 2013 WL 1283822, at *4 (N.D. Ill. March 27, 2013). Schumann argues that any flight risk is mitigated by his assertions that he has been living openly in the United States under his real name and that his attorney has been in touch with authorities in Poland about his criminal case. But the fact that he may have been living openly is not sufficient to overcome the presumption against bail. *See In re Extradition of Noeller*, 2017 WL 6462358, at *4. Schumann also asserts that he is not a danger to the community. On this point, the court agrees with Schumann. There is no evidence that he has engaged in criminal activity since the events underlying these proceedings. Although the fact that there is probable cause to show that he engaged in criminal acts involving the threat of violence or actual violence cuts in the other direction, the court cannot conclude based on the information before it that Schumann currently poses a danger to the community.

However, even if Schumann were able to surmount the condition precedent with respect to his potential flight risk, bail would be warranted only if he presents "special circumstances," which requires an "extraordinary" showing of conditions

"not merely applicable to all defendants facing extradition." *In re Extradition of Noeller*, 2017 WL 6462358, at \*4. There are no "bright-line parameters" defining what constitutes a special circumstance, but cases have rejected such a finding for factors like "severe financial and emotional hardships." *See In re Extradition of Molnar*, 182 F. Supp. 2d at 688. Relying on *Molnar*, Schumann argues that his role as the sole financial provider for his minor son and in sending money to provide caretakers for his seriously ill grandparents in Poland constitute special circumstances and that releasing him on bond pending his extradition would allow him time to sell his assets to follow through with those financial commitments. (R. 28, Def.'s Br. at 3-4.) But in *Molnar*, the court rejected the fugitive's argument that his seriously ill mother's financial dependence on his assistance, standing alone, amounted to a special circumstance. *In re Extradition of Molnar*, 182 F. Sup. 2d at 689. Although the court allowed bail in that matter based on a collection of special circumstances, including that the defendant had never been a fugitive from justice, it explicitly held that none of the factors, including his mother's financial dependence, "on their own, rise to the level of 'special circumstances' which would merit release." *Id.* Because Schumann has pointed only to his relatives' dependence on his financial assistance, and because the other conditions in *Molnar* are not present here, the *Molnar* case does not support a conclusion that bail is appropriate in this case. The inability to have any contact or to provide support for family members are typical circumstances whenever one is taken into custody and cannot be considered "special circumstances."

## Conclusion

For the foregoing reasons the government's requests that this court certify Schumann's extradition for the Secretary of State's surrender decision and order him to remain in custody pending the conclusion of the extradition process are granted. (R. 6; R.8.) It is therefore ordered that this matter is certified to the Secretary of State. It is further ordered that a certified copy of this Memorandum Opinion and Order and Certification of Extradition, together with all formal extradition documents received into evidence, a certified copy of all testimony and evidence taken at the hearings, and a copy of all memoranda of law filed on the issue of extradition, and this and all other orders of the court, shall be forwarded to the Secretary of State by the Clerk of the United States District Court for the Northern District of Illinois. Finally, Piotr Josef Schumann shall remain in the custody of the United States Marshal pending final disposition of this matter by the Secretary of State.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**